UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS WILLIAMS et al.,

                Plaintiffs,                Civil Case No. 13-12732
                                              Honorable Linda V. Parker

v.

ALIMAR SECURITY, INC.,

                Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT AND PARTIAL MOTION TO DISMISS FOR FAILURE TO PROSECUTE [ECF NO. 44]

Plaintiffs Marcus Williams, Michael Taylor, Dennis Stone (voluntarily dismissed), and Aaron Bradford (collectively "Plaintiffs"), filed this collective action lawsuit under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiffs assert that they are hourly employees and that Defendant Alimar Security, Inc. ("Defendant" or "Alimar") violated the provisions of the FLSA by failing to pay Plaintiffs time and a half for the time they worked in excess of forty hours per workweek.  Currently before the Court is Defendant's motion for summary judgment. For reasons that follow, the Court **DENIES** Defendant's motion.

1

# I.    Factual Background

Plaintiffs were employed by Defendants as "alarm response security officers," (AROs) for the duration of the three years preceding the filing of this lawsuit. (Compl., ECF No. 1 at Pg. ID 3.) Defendant provides security services to its customers, including "armed response to alarms at the residential and business premises of its customers." (*Id.*) As alarm response security officers, Plaintiffs monitored and responded to the alarms on the premises of Defendant's customers. (*Id.*) This required Plaintiffs to travel and inspect said premises when the alarms sounded, and determine the cause of an alarm's sounding. (*Id.*) Further, Plaintiffs would "secur[e] the premises as needed and repor[t] the status of the premises to Alimar or law enforcement agencies." (*Id.*)

Plaintiffs assert that they were employed by Defendant as hourly employees and were "not exempt to the overtime pay requirements of the FLSA." (*Id.* at Pg. ID 4.) Plaintiffs further contend that they regularly worked in excess of forty-eight hours, yet were paid "at the rate of $11.37 per hour for forty hours per week, with no compensation for hours worked in excess of forty per week." (*Id.*) In support of this assertion Plaintiffs claim: (1) they regularly worked 48 hour weeks – specifically four, twelve-hour shifts per week – and were not paid for the eight hours worked in excess of forty; (2) Plaintiffs were regularly required to remain at work for one hour at the end of their shifts; and (3) Plaintiffs were regularly

required to attend training sessions and meetings for which they were not compensated. (*Id.*) As a result of Defendant's wrongdoing, Plaintiffs filed this lawsuit. (ECF No. 1.)

Plaintiffs make known to the Court, in their complaint, that their lawsuit is a collective class action. (Compl., ECF No. 1 at Pg. ID 4.) Plaintiffs assert that said class consists of employees similarly situated to Plaintiffs, who have either worked or are currently working for Defendant and were not paid overtime for hours worked in excess of forty hours. (*Id.*) Further, Plaintiffs assert that class members: (1) perform or have performed the same or similar work as Plaintiffs; (2) the specific job titles or responsibilities of each class member do not prevent collective treatment; and (3) "[a]ll [c]lass [m]embers, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek." (*Id.* at Pg. ID 5.) On November 20, 2013, Plaintiffs motion for temporary class certification (ECF No. 11) was granted. (ECF No. 19.)

Plaintiffs bring a single cause of action against Defendant. Specifically, Plaintiffs assert that Defendant's practice of not paying Plaintiffs and class members the time and a half rate that they are owed, pursuant to the FLSA, for hours worked in excess of 40 hours, constitutes a violation of 20 U.S.C. § 207. (Compl., ECF No. 1 at Pg. ID 6.) Plaintiffs further assert that as a result of this violation, Plaintiffs and class members are entitled to: (1) recover their overtime

compensation; (2) "an amount equal to all of their unpaid overtime wages as liquidated damages," pursuant to 29 U.S.C. § 216(b); and (3) "attorney fees and costs, as required by the FLSA." (*Id.*) Shortly after the filing of Plaintiffs complaint, Defendant filed its summary judgment motion. (ECF No. 44.) A motion hearing was held on February 9, 2016.

## II.    Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475

4

U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence

upon which a jury could reasonably find for that party; a "scintilla of evidence" is

insufficient.  *See Liberty Lobby*, 477 U.S. at 252.

     "A party asserting that a fact cannot be or is genuinely disputed" must

designate specifically the materials in the record supporting the assertion,

"including depositions, documents, electronically stored information, affidavits or

declarations, stipulations, admissions, interrogatory answers, or other materials."

Fed. R. Civ. P. 56(c)(1).  The court must accept as true the non-movant's evidence

and draw "all justifiable inferences" in the non-movant's favor.  *See Liberty Lobby*,

477 U.S. at 255.

### III.   Applicable Law and Analysis

### 1.  Failure to Prosecute

     Defendant first seeks dismissal on the premise that named Plaintiff Marcus

Williams – as well as collective action opt-ins Keith Deramus, Darren Malone, and

Jeremy Ray – have failed to respond and appear for depositions to which they had

notice. (Def.'s Mot., ECF No. 44 at Pg. ID 745–46.)  Defendant asserts that

without these depositions, Defendants are "unable to determine the key issues in

this case" as they relate to these absent individuals. (*Id.* at Pg. ID 745.) Further,

Defendant contends that the failure to show should result in dismissal for failure to

prosecute, pursuant to Federal Rules of Civil Procedure 30(g), 37(d), 41(b), and

EDMI L.R. 41.2. (*Id.*)

The Sixth Circuit discourages involuntary dismissals without prior notice.

*Rogers v. City of Warren*, 302 F. App'x 371, 376 (6th Cir. 2008). "[I]n the absence

of notice that dismissal is contemplated, a district court should impose a penalty

short of dismissal unless the derelict party has engaged in bad faith or

contumacious conduct." *Id.* (citing *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th

Cir. 1988)). To assess the appropriateness of a district court's decision to

involuntarily dismiss a complaint, the Sixth Circuit often applies the following

four-factor test laid out in *Mulbah v. Detroit Bd. Of Educ.*, 261 F.3d 586 (6th Cir.

2001):

> (1) whether the party's failure is due to willfulness, bad faith, or fault;
> (2) whether the adversary was prejudiced by the dismissed party's
> conduct; (3) whether the dismissed party was warned that failure to
> cooperate could lead to dismissal; and (4) whether less drastic
> sanctions were imposed or considered before dismissal of the action.

*Mulbah, 261* F.3d at 589.

Additionally, concerning, discovery disputes, this Court has indicated the

following in its practice guidelines:

> Local Rule 37.1 requires the parties to attempt to narrow their
> disagreements in regard to discovery. The Court expects counsel to
> make every effort to comply with this Local Rule, to confer with one
> another and resolve discovery matters themselves. However, if
> counsel have conferred and made every effort to reach an agreement
> but have been unsuccessful, the Court will be available to conduct a

6

telephone conference on short notice in order to resolve discovery disputes expeditiously and without the need for motions. **No discovery motion may be filed before the Court is contacted**.

Practice Guidelines for Judge Linda V. Parker, Discovery Disputes – Section D:

https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=46

(emphasis in the original).

Given that Defendant has failed to notify the Court of its discovery dispute prior to seeking dismissal, and the fact that Plaintiff Williams as well as the collective action opt-ins have yet to receive any warning from this Court that failure to cooperate would lead to dismissal, the dismissal of these individuals at this time is inappropriate. Accordingly, Defendant's dismissal request is **DENIED**.

## 2. Certain named opt-ins did not work any overtime hours

Defendant next asserts that the record reflects that collective action opt-ins Derek Banks and Jeremy Ray have not worked more than 40 hours in a work week, and that Mark Allen apparently worked over 40 hours per week on four occasions but was paid for this time.

Concerning collective action opt-ins Banks and Ray, Defendant simply states the following: "Derek Banks and Jeremy Ray do not appear to have worked any hours over 40 in a work week and therefore should be dismissed from this overtime lawsuit. (Ex. R)." (Def.'s Mot., ECF No. 44 at Pg. ID 746.) Exhibit R contains a host of different documents and spans over 100 pages. Defendant fails to direct the Court's attention to any particular section of Exhibit R, and fails to

explain how Exhibit R demonstrates that these Plaintiffs have not worked any

overtime hours. "Issues adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation, are [ ] deemed waived. It is not sufficient

for a party to mention a possible argument in the most skeletal way, leaving the

court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th

Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear*

*Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)) (further citations

omitted).

Regarding collective action opt-in Mark Allen, Defendant states the

following:

> Mark Allen apparently did work over 40 hours per week on four
> occasions but appears to have been paid for this time. See Ex. R and
> Ex. S. Allen admits he was paid overtime for certain occasions and
> cannot recall other times he may have worked overtime. (Ex. E at 31).
> As such, Allen appears to have been paid overtime (at time and a half)
> for any hours worked over 40.

(Def.'s Mot., ECF No. 44 at Pg. ID 746.) Again, Exhibits R and S contain a wide

array of documents. Defendant fails to direct the Court's attention to any specific

document in support of his assertion that Mr. Allen was compensated. Further,

regarding Exhibit E, the deposition of Allen, Defendant directs Allen's attention to

the fact that he was paid in one instance when he worked 9.25 hours more than

forty in a week. (Allen Dep. ECF No. 44-6 at Pg. ID 799.) The Court finds that

without more, Defendant has failed to demonstrate that Allen did not work any

additional overtime hours, especially since Defendant concedes that response officers were schedule for 12 hour shifts, four days a week. (Def.'s Mot., ECF No. 44 at Pg. ID 740.) Given that Defendant fails to demonstrate that Allen was compensated for all other hours worked in excess of forty hours in a workweek, Defendant's argument is futile. Accordingly, Defendant's request for dismissal of collective action opt-ins Banks, Ray, and Allen is unsubstantiated.

### 3. On-call and/or waiting to be engaged

In the complaint, Plaintiffs indicate that they were employed as alarm response security officers from June 2010 through June 2013, i.e., "during the three years preceding the date of filing of th[e] [c]omplaint." (Compl., ECF No. 1 at Pg. ID 3.) Defendant asserts that it has employed AROs since approximately September 1, 2010, and that the vast majority of AROs were hired and trained in June 2012. (Def.'s Mot., ECF No. 44 at Pg. ID 737.) Further, Defendant states in its summary judgment motion that after consulting with its payroll company, Acrisure, it determined that the AROS were exempt from the overtime requirements of the FLSA, made the AROs salaried employees, and compensated them "at a salary of $909.60 bi-weekly, or $454.30 per week for all hours worked during the workweek." (*Id.* at Pg. ID 739.) Defendant contends that "the salary structure was explained to all AROs in a meeting in July 2012." (*Id.*)

9

Defendant explains that thereafter, and prior to the filing of this lawsuit, unknown AROs filed a charge with the Department of Labor alleging that Defendant owed them overtime. (*Id.* at Pg. ID 741.) Consequently, beginning in April 2013, Defendant changed its payroll practices, deeming AROs non-exempt under the FLSA and compensating them at an *hourly* rate of $8.75 per hour, plus overtime. (*Id.*) Defendant continued to schedule AROs for twelve hour shifts, four days a week. (*Id.*)

Thus, from September 2010 until April 2013, Defendants classified Plaintiffs and class members as salaried employees, exempt from overtime pay under the FLSA. After April 7, 2013 they were reclassified as hourly employees entitled to overtime pay. (*Id.*) In its summary judgment motion, Defendant *does not* assert that the reason Plaintiffs and class members are not entitled to time and a half overtime pay for hours worked in excess of 40 hours per week for the September 2010 –April 2013 period is because they were properly classified as employees exempt from overtime pay under the FLSA during this period. In fact, Alimar states that "Defendant is not challenging the AROs' non-exempt status in this case." (Def.'s Mot., ECF No. 44 at Pg. ID 741, n.1.) Rather, Defendant asserts that the reason Plaintiffs and class members are not entitled to overtime pay is that Plaintiffs and class members "were not working their entire 12 hour shifts and

10

instead, when not on alarm runs, were legally 'on call' or 'waiting to be engaged' and therefore not entitled to compensation during those hours." (*Id.* at Pg. ID 746.)

Defendant asserts in support of its position that in addition to the Code of Federal Regulations (CFR), an nonbinding 1988 Tenth Circuit case – *Norton v. Worthen Van Services, Inc.*, 839 F.2d. 653 (10th Cir. 1988) – "is instructive as to when employees are on-call." (Def.'s Mot., ECF No. 44 at Pg. ID 747.) This Court disagrees and holds that in addition to the CFR, there is binding Sixth Circuit and United States Supreme Court case law that guides the Court's requisite analysis.

Under certain circumstances, time spent waiting to work while on call may constitute working time under the FLSA. *See Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944). The Department of Labor, the executive department charged with administering the FLSA, explains:

> [a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.' An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

329 C.F.R. § 785.17;

Recently, in *Adair v. Charter County of Wayne*, 452 F.3d 482 (6th Cir. 2006), the Sixth Circuit laid out the requisite analysis for an on-call situation, holding in relevant part:

11

The FLSA "provides that employees must be compensated at one and one-half times their regular rate for overtime work." *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 609 (6th Cir.1992) (citing 29 U.S.C. § 207(a)). Although the FLSA does not state whether time spent on call is working time, the Supreme Court has held that, under some circumstances, waiting time is compensable. *See Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore v. Swift & Co.,* 323 U.S. 134, 136, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

[T]his circuit has acknowledged that "an employee may be entitled to compensation even though he or she is on call at home or elsewhere." *Martin,* 968 F.2d at 609. In *Martin,* we held that "on-call time spent at home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits." *Id.* at 611.

The *Martin* court evaluated the claims in light of the precedent of other circuits and the Department of Labor's promulgated regulations concerning the compensability of on-call time. *Id.* at 610-11. The relevant regulations provide that "[t]ime spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits" and that "where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable." 29 C.F.R. § 553.221(d). This court found summary judgment against the plaintiffs' claims appropriate because they failed to demonstrate that the employer's on-call policy resulted in severe restrictions on their personal time, imposing "burdens that seriously interfere with their ability to use the time for personal pursuits," such as being summoned to work so frequently that effective use of personal time was made impracticable. *Id.* at 611-12.

*Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 487 (6th Cir. 2006). "[O]n-time call

time spent at home may be compensable if the restrictions imposed are so onerous

12

as to prevent employees from effectively using the time for personal pursuits."
*Martin*, 968 F.2d at 611."

Defendant states in his motion that AROs had few calls per shift (sometimes none) and that the majority of responses were of short duration. (Def.'s Mot., ECF No. 44 at. Pg. ID 738.) Defendant further argues that officers were able to engage in personal activities such as sleeping, spending time with friends and family, and going out to eat. (*Id.*) Essentially, Defendant asserts that when Plaintiff and class members were not responding to alarms, they were able to do as they wished. (*Id.*)

Defendant's CEO, Paul Martinelli, stated at his deposition that "[t]he alarm response officers had a lot of freedom to do whatever they wanted to do." (Martinelli Dep., ECF No. 44-2 at Pg. ID 765.) When asked to provide examples, Martinelli stated, "I'm only going to give you examples that I have personal knowledge of…[s]hopping, visiting relatives, sleeping, taking off their uniform to go to sleep, picking up their dog at the vet, taking their kids to and from school. I think the list would probably continue on, I just can't remember all of them, but those are actual instances." (*Id.*)

In a July 27, 2012 email to AROs, Martinelli states the following:

All Alarm Officers are on salary! This was made perfectly clear! Just like the rest of us, you do NOT get holiday pay, overtime pay or any other pay. And for the most part, many of you are not even working hard or much during your 12 hour shifts, so it works out well for all of us.

13

We are finding some of you "AWOL" during your shift and wondering why you are parked where you are parked. From now on, please let the dispatcher know where you are at all times as they have been instructed to follow you on the Teletrac. Also, some of you are in violation of our post orders and have gone to your residence without permission. A few of you have even had other family members or friends in our vehicles. LET ME BE VERY CLEAR. YOU DON'T GO HOME WITHOUT PERMISSION AND YOU ARE NEVER TO HAVE ANOTHER NON-EMPLOYEE OF ALIMAR IN OUR VEHICLE WITHOUT MY PERMISSION. I HAVE A ZERO TOLERANCE FOR VIOLATION OF THE ABOVE AND WILL MAKE ANY MOVE NECESSARY TO MAINTAIN ORDER AND COMPLIANCE WITH OUR RULES AND POLICIES. THEREFORE, IF I FIND OUT THAT ANY OF YOU HAVE VIOLATED OUR POST ORDERS OR POLICES THERE WILL BE NO SECOND CHANCE.

(Martinelli Email, ECF No. 44-8 at Pg. ID 812-13.)

What Plaintiffs' attempted to get away with while working their scheduled shift, does not constitute what Plaintiffs were permitted to due under Defendant's Polices and Post Orders. Contrary to Defendant's assertions, Martinelli's statements in the email indicate that the limitations placed on AROs were much more restrictive and onerous than what Defendant lets on. Based on the referenced email, AROs were clearly unable to do as they wished.

Moreover, Plaintiffs assert the following facts in their responsive brief – contrary to Defendant's contentions:

Plaintiffs' job involved reporting to Alimar's offices at the beginning of the shift, picking up the equipment they would use, and traveling in Alimar's vehicle to their assigned patrol areas. They were uniformed throughout their shifts and required to be in or near the vehicle at all times. If an alarm call came in they went to the scene, investigated to

14

> determine whether there had been a security breach, dealt with the situation according to established procedures, reported their action, and returned to the center of the patrol area. They were also called upon to perform other tasks, such as transporting other guards or checking on business with stationary Alimar guards, during the day. At the end of the shift they returned to Alimar, turned in their vehicles and equipment, completed their reports if necessary and turned in the reports.

(Pls. Resp. Br., ECF No. 46 at Pg. ID No. 1209.)

The "Shift Procedures" section of Defendant's revised "June 2012 Alarm Response Officer Post Orders" support Plaintiffs assertions. In this section, the following is stated:

> Head to the center or nearest point of the center of your city sector. Stay in or near your vehicle with the phone near your vehicle with the phone and messaging screen turned on and tablet ready… You are not to return to the office until your shift has ended unless called to the office by management or dispatch!

(Post Order, ECF No. 46-5 at Pg. ID 1276.)

This section of the Post Orders suggest that AROs were required to stay in the center of their post areas for the duration of their twelve-hour shifts and could not leave said post area until their work shift ended. Further, the Post Orders also state that when seeking to leave their sector or proceed to their residences, AROs were prohibited from doing so without permission from dispatch. (*Id.* at Pg. ID 278.) Generally, AROs were expected to be in the center of their post area until their shift was over; and towards the end of the shift AROs were expected to fill the gas tank, prepare the vehicle for the next officer and complete reports. (*Id.* at

15

Pg. ID 277-78.) Having reviewed the record, it is clear that Plaintiffs' factual assertions – as well as the Post Orders and Martinelli's email – suggest that the work conditions imposed burdens on the AROs that were quite possibly so onerous that they prevented employees from effectively using their time for personal pursuits – given that AROs were to be stationed in the center of their duty area in their vehicle for the duration of their twelve hour work shift unless they were on a run, responding to a sounding alarm. Plaintiffs' assertions are contrary to Defendant's and therefore, a question of material fact remains – thus, precluding summary judgment to Defendant.

Alternatively, Defendant asserts that if Plaintiffs and class members were not on-call, they were waiting to be engaged. Defendant asserts the following:

> If this Court finds the AROs were not on-call, they were, in the alternative "waiting to be engaged." Under the regulations, waiting time is not compensable if employees are "waiting to be engaged" rather than "engaged to wait." 29 CFR 785.14. This uses a similar analysis as determining on–call time described above but contains a few additional factors. In 29 CFR 785.14

(Def.'s Mot., ECF No. 44 at Pg. ID 748.)

"In determining whether an employee is engaged to wait or waiting to be engaged, the critical inquiry is whether the time spent waiting is primarily for the benefit of the employer or employee." *Bernal v. Trueblue, Inc.,* 730 F. Supp. 2d 736, 741 (W.D. Mich. 2012). In Bernard, the district court held that federal courts consider several non-controlling and non-exhaustive factors in determining

16

whether waiting is predominantly for the benefit of the employer or employee.
These factors include: (1) whether the agreements and understandings between the
employer and employee indicate that waiting time will be compensated; (2)
whether the employer requested or required that the employee wait; (3) the extent
to which an employee's free will is constrained during waiting time; and (4) the
extent to which the employer actually benefits from the waiting time. *Id.*
Defendant asserts that "the facts supporting waiting to be engaged and on-call in
this case are the same." In support of this assertions Defendant provides nothing
more than the following five bullet points:

- The officers were provided a company cell phone and did not have to be near a landline phone
- The officers have a significant response time of 45 minutes for ADT and 30 minutes for other companies
- The majority of responses were of short duration
- Few calls per shift, sometimes none
- The officers were able to engage in personal activities including but not limited to sleeping, spending time with friends and family, going out to eat, engaging in activities

(Def.'s Mot., ECF No. 44 at Pg. ID 749.)

   Again, the Sixth Circuit holds that "it is not sufficient for a party to mention
a possible argument in the most skeletal way, leaving the court to ... put flesh on its
bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting
*Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59
F.3d 284, 293–94 (1st Cir. 1995)) (further citations omitted). Defendant leaves this

Court to speculate and develop Defendant's arguments as to how the waiting time in this case was predominantly for the benefit of its employee. Defendant's waiting to be engaged argument is asserted in a perfunctory manner unaccompanied by some effort at developed argumentation, and is therefore deemed waived. (*Id.*)

### 4. Consent to Salary

Next, Defendant seeks a ruling indicating that overtime recovery for Plaintiff and class members is limited to half the overtime hours they worked under the "fluctuating workweek" rationale.

Essentially, Defendant argues that the salary compensated Plaintiffs and class members for the straight-time component of all hours worked, and that therefore they are only entitled to an overtime premium of half of their regular rate of pay. (Def.'s Mot., ECF No. 44 at Pg. ID 750.) Defendant argues that therefore, the proper calculation of damages involves dividing the plaintiffs' salary for a particular week by the number of hours of work and applying a 50% premium to all hours worked beyond forty. (*Id.*)

While Defendant argues that the fluctuating work week approach is the appropriate measure of damages, Plaintiffs argue that the method proposed by Defendant for calculating damages is not proper since there was no clear and mutual understanding that the salaries were intended to compensate them for all hours worked in a week. (Pls.' Resp. Br., ECF No. 46 at Pg. ID 1220.) Plaintiffs

further argue that the Defendant never paid them under the fluctuating work week

model and that therefore that any overtime amounts owed would be time and a half

for each hour of overtime. (*Id.* at 1221)

29 CFR § 778.114 is the regulation governing the fluctuating work week

model. That regulation explains the premise behind the fluctuating work week

model:

> An employee employed on a salary basis may have hours of work
> which fluctuate from week to week and the salary may be paid him
> pursuant to an understanding with his employer that he will receive
> such fixed amount as straight time pay for whatever hours he is called
> upon to work in a workweek, whether few or many. Where there is a
> clear understanding of the parties that the fixed salary is compensation
> (apart from overtime premiums) for the hours worked each workweek,
> whatever their number, rather than for working 40 hours or some
> other fixed weekly work period, such a salary arrangement is
> permitted by the Act if the amount of the salary is sufficient to
> provide compensation to the employee at a rate not less than the
> applicable minimum wage rate for every hour worked in those
> workweeks in which the number of hours he works is greatest, and he
> receives extra compensation, in addition to such salary, for all
> overtime hours worked at a rate not less that one-half his regular rate
> of pay. Since the salary in such a situation is intended to compensate
> the employee at straight time rates for whatever hours are worked in
> the workweek, the regular rate of the employee will vary from week
> to week and is determined by dividing the number of hours worked in
> the workweek into the amount of the salary to obtain the applicable
> hourly rate for the week. Payment for overtime hours at one-half such
> rate in addition to the salary satisfies the overtime pay requirement
> because such hours have already been compensated at the straight
> time regular rate, under the salary arrangement.

29 CFR § 778.114

Broken down, § 778.114 requires four conditions before an employer may apply a fluctuating work week model: (1) the employee's hours fluctuate from week to week; (2) the employee receives a "fixed weekly salary" that does not vary based on the number of hours worked during the week; (3) the fixed salary provides compensation at a regular rate that is not lower than minimum wage; and (4) there is a "clear mutual understanding" among the parties that the fixed salary is compensation (apart from overtime premiums) for all hours worked each workweek, whatever their number. *Dorsey v. TruGreen Ltd. P'ship,* 13–10412, 2013 WL 6048999, at *8 (E.D. Mich. Nov.15, 2013) (adopting report and recommendation) (citing 29 CFR § 778.114(a) and (c)).

"Whether to apply the fluctuating work week model of calculating damages is a question of law for the [c]ourt to decide. But, the [c]ourt can only apply that method if there is a clear indication that the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours." *Thomas v. Doan Const. Co.*, No. 13-11853, 2014 WL 1405222, at *13 (E.D. Mich. Apr. 11, 2014) (citations and internal quotations omitted). That question – whether an employer and employee agreed to a fixed weekly wage for fluctuating hours – "is a question of fact." *Id.* (citations omitted).

Here, then, there is an issue of fact as to whether the parties expressly agreed to a fixed weekly wage for fluctuating hours. Defendant points to an email and

20

memorandum sent to Plaintiffs, both of which indicated that AROs were salaried. (Def.'s Mot. ECF No. 44 at Pg. ID 752.) The Court finds that these documents do not support the assertion that there was a fluctuating work week schedule in place, since there is no agreement in either statement that the parties agreed to one. *See Thomas*, No. 13-11853, 2014 WL 1405222, at *13. There appears no negotiation. The Court finds that there is an issue of fact as to the parties' understanding regarding Plaintiff's pay.  If this case goes to trial, the jury will have to answer whether the parties agreed to a fluctuating work week schedule. If they did, the Court will apply the fluctuating work week method of damages; if they did not, the Court finds that Plaintiffs would be entitled to one-and-one-half times the regular rate for the overtime hours worked. *See id.*

## 5. Liquidated Damages

Defendant asserts that Plaintiffs are not entitled to liquidated damages because the failure to pay overtime damages was made in good faith and a reasonable belief that the FLSA was not violated.  With respect to liquidated damages under the FLSA, the Sixth Circuit holds the following:

> Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1998). Liquidated damages under the FLSA " 'are compensation, not a penalty or punishment.' " *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir.1971) (quoting

21

*Overnight Motor Co. v. Missel*, 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) ("It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." (internal quotations omitted)).

A district court, however, has the discretion not to award liquidated damages to a prevailing plaintiff if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938." 29 U.S.C. § 260 (1998); *see also Herman v. Palo Group Foster Home*, 183 F.3d 468, 474 (6th Cir.1999). This burden on the employer is substantial and requires "proof that [the employer's] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *McClanahan*, 440 F.2d at 322 (internal quotations omitted) (emphasis added). "In the absence of such proof [, however,] a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Id.*; *see also Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 405 (7th Cir.1999) ( " 'Although in the final analysis, we review a district court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling.' " (quoting *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir.1998))).

*Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002)

The Court concludes that Defendant has not met its burden of demonstrating good faith when it instituted its payment plan. Defendant merely states that the decision to make the AROs salary was after consultation with its payroll company.

22

The only evidence submitted in support of this assertion is a declaration from Martinelli in which he states that "[t]he decision to pay AROs salary was based on my consultations with my payroll company, Acrisure, and I believed in good faith that the AROs were exempt from overtime requirements and could be paid a salary for all hours worked." (Martinelli Declaration, ECF No. 44-3 at Pg. ID 767.) This declaration alone does not persuade the Court that Defendant made the compensation determination on a good faith basis, given that Mr. Martinelli also said in his email to AROs, regarding salaried pay, the following: "All Alarm Officers are on salary! And for the most part, many of you are not even working hard or much during your 12 hour shifts, so it works out well for all of us." Without more, the proof provided by Defendant fails to meet Defendant's substantial burden to demonstrate that its failure to obey the statute was both in good faith and predicated upon such reasonable grounds.

## 6. Conditional Certification

In two short sentences, Defendant seeks to dismiss the class members because the final collective action class was never certified, as required by a discovery order. (Def.'s Mot., ECF No. 44 at Pg. ID 753-54.) Defendant provides no developed argumentation, provides no case law supporting this assertion. Defendant simply refers this Court's attention to the discovery order entered prior to reassignment of the case to this Court. (ECF No. 9.) Given that a new

23

scheduling order was subsequently entered in this case (ECF No. 38), and the order makes no mention of a date for filing a motion for final certification, dismissal on this basis is unwarranted.

### 7. Offers of Judgment

Defendant initially sought entry of Judgment based of the offers of judgment he made against Plaintiffs and class members. However, at the motion hearing, Defendant withdrew  this argument in light of the recent United States Supreme Court decision, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016) which held that a complaint was not rendered moot by unaccepted offers of judgment.

Accordingly, for the abovementioned reasons, Defendant's motion for summary judgment (ECF No. 44) is **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 16, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 16, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager